IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JORDAN OUTDOOR ENTERPRISES, LTD.,  *

    Plaintiff,               *

vs.                          *     CASE NO. 4:18-CV-126 (CDL)

J&M CONCEPTS, LLC,       *

    Defendant.           *

O R D E R

J&M Concepts, LLC ("J&M") obtained a license to use intellectual property owned by Jordan Outdoor Enterprises, Ltd. ("Realtree") on J&M's energy drink containers. Realtree later permitted the Coca-Cola Company to use some of the same Realtree intellectual property on Mello Yello soft drink containers. Shortly after the Realtree-Mello Yello campaign started, J&M assigned its interest in the Realtree license to Country Breeze Ventures, LLC ("Country Breeze"). Country Breeze later sued Realtree for breach of contract and fraudulent inducement based on the Realtree-Mello Yello campaign. Realtree brought this action against J&M, alleging that J&M did not pay royalties due under the license agreement and that J&M must pay Realtree's costs of bringing this action and defending the Country Breeze litigation. J&M asserted counterclaims against Realtree for breach of contract, intentional and negligent misrepresentation, tortious interference with business relations, and litigation

expenses.   Presently pending before the Court are the parties' cross-motions for summary judgment.   As discussed below, both Realtree's motion (ECF Nos. 29 & 30) and J&M's motion (ECF Nos. 26 & 31) are granted in part and denied in part.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant or necessary to the outcome of the suit.   *Id.* at 248.   A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.   *Id.*

## FACTUAL BACKGROUND

Realtree is a designer of camouflage patterns.   Realtree licenses its intellectual property rights, including its trademarks and camouflage patterns, to businesses in exchange for license fees.   Realtree entered one such agreement with J&M, an energy drink manufacturer, so that J&M could decorate its product packaging with Realtree's trademarks and camouflage

designs.   The License Agreement was executed on June 15, 2011 and became effective January 1, 2013.   Realtree granted J&M a license to use "Licensed Property"—certain trademarks, copyrights, and licensed designs—"in connection with the Licensed Products."   Def.'s Mot. for Summ. J. Ex. A, License Agreement § 2.1, ECF No. 26-3 at 2; *id.* Schedule 1, ECF No. 26-3 at 13 (listing licensed designs).   The Licensed Products are "Team Realtree Camouflage Beverages."   *Id.* Schedule A, ECF No. 26-3 at 15.   Schedule A of the License Agreement states that J&M "has an exclusive on [certain types of] beverages for the term of this Agreement."   *Id.*   The "exclusive beverages" included carbonated soft drinks and energy drinks.[1]

In 2014, Realtree and J&M amended the License Agreement by executing an addendum that became effective October 1, 2014. The addendum increases the minimum annual royalty payment from $50,000 per year to $75,000 per year and changes the royalty reporting periods from annually to quarterly, effective beginning in 2015.   Def.'s Mot. for Summ. J. Ex. B, Addendum Schedule A, ECF No. 26-4 at 3.   And, it replaces the License Agreement's indemnification provision.   Addendum 3, ECF No. 26-4 at 4.   The Addendum also contains an updated Schedule 1. Addendum Schedule 1, ECF No. 26-4 at 5.   Under the License

---

[1] For additional facts about the exclusivity provision of the License Agreement, see *Country Breeze Ventures, LLC v. Jordan Outdoor Enterprises, Ltd.,* No. 4:18-CV-172 (CDL), 2020 WL 1876252, at *2 (M.D. Ga. Apr. 15, 2020).

Agreement, J&M manufactured, marketed, and sold Team Realtree and Realtree branded energy drinks from January 1, 2013 to September 25, 2015.

In 2014, Realtree informed J&M representatives that it wanted to grant Coca-Cola a license to use certain Realtree intellectual properties in connection with the packaging and marketing of Coca-Cola's Mello Yello carbonated soft drink. According to J&M, Realtree represented that it was "just for a test" for one quarter in the fall of 2015. Hughen Dep. 74:8-76:16, ECF No. 37; Kvamme Dep. 80:5-6, ECF No. 28. Noting that J&M had previously blocked a similar arrangement for using Realtree intellectual property on Mountain Dew containers, Realtree asked J&M to agree to the Mello Yello project. Hughen Dep. 74:8-12. J&M's representative informed Realtree that its CEO was "okay with y'all using it for a quarter." *Id*. at 76:17-22. In January 2015, Realtree entered a permission agreement that granted Coca-Cola a license to use certain intellectual properties on Mello Yello containers. Pl.'s Mot. for Summ. J. Ex. E, 2015 Permission Agreement (Jan. 1, 2015), ECF No. 30-7. Those intellectual properties included two trademarks, three copyrights, and four licensed designs, all of which are listed on Schedule 1 of the Realtree-J&M License Agreement 2014 Addendum. *Id.* Attach. A, ECF No. 30-7 at 6. The Permission Agreement did not grant Coca-Cola a license to use the "Team

4

Realtree" or "Realtree w/ Antlers" brands. *Id.* J&M did not receive a copy of the Permission Agreement.

Realtree contends that the Realtree-Mello Yello campaign was a limited time engagement that ended shortly after the fall 2015 hunting season, but the term of the 2015 Permission Agreement was from January 1, 2015 to March 31, 2016, and the Permission Agreement permitted Coca-Cola to distribute, market, and sell items displaying Realtree's intellectual property after that term if they were manufactured during the term. 2015 Permission Agreement § 4. The Realtree-Mello Yello campaign launched in August 2015, with Realtree camouflage patterns appearing on Mello Yello containers. Although J&M believed that the Realtree-Mello Yello campaign was a breach of the License Agreement's exclusivity provision, J&M did not raise the issue with Realtree in 2015. In January of 2016, Realtree and Coca-Cola executed another permission agreement that permitted Coca-Cola to use Realtree's intellectual property on Mello Yello containers from April 1, 2016 until March 31, 2017. Pl.'s Mot. for Summ. J. Ex. K, 2016 Permission Agreement (Apr. 1, 2016), ECF No. 30-13.

By the end of August 2015, sales of J&M's Realtree energy drink products had begun to decline, and J&M was almost $90,000.00 behind on its royalty payments to Realtree. J&M began exploring the sale of its Team Realtree and Realtree

branded energy drinks to Country Breeze, which is led by Kimberly and James Willman. J&M did not inform Country Breeze about the Realtree-Mello Yello campaign during due diligence. Representatives from Country Breeze, J&M, and Realtree met in September 2015 to discuss the proposed sale. Both Realtree and J&M assert that the Realtree-Mello Yello campaign was discussed extensively in the presence of the Willmans, but they acknowledge that the Willmans contend that they were *not* informed about the Realtree-Mello Yello campaign. *See Country Breeze Ventures, LLC,* 2020 WL 1876252, at *3 (summarizing James Willman's testimony regarding the September 10, 2015 meeting). Country Breeze brought a separate action against Realtree, asserting that it did not know about the Realtree-Mello Yello campaign and would not have purchased the Realtree energy drink business from J&M if it had.

After the meeting between J&M, Country Breeze, and Realtree, J&M asked for Realtree's written consent to assign the License Agreement to Country Breeze. Def.'s Mot. for Summ. J. Ex. C, Letter from M. Kvamme to Realtree (Sept. 11, 2015), ECF No. 26-5. Realtree's senior vice president of licensing signed an acknowledgment which stated, "[t]he undersigned hereby consents to the assignment of the Agreement to which such undersigned is a party in connection with the" sale of J&M's assets to Country Breeze. *Id.* Although the Realtree

representative thought that the effect of Realtree's consent was
that Realtree would enter a new contract with Country Breeze, a
new contract is not an express condition of the written consent,
and Realtree did not execute a new contract with Country Breeze.
Realtree understood that after the assignment of the License
Agreement, Country Breeze would undertake the duties and
obligations that had previously been required of J&M.

Country Breeze and J&M entered an asset purchase agreement
for J&M's Realtree energy drink business.   Country Breeze
executed two $1 million promissory notes to J&M, due in
installments.  The Willmans personally guaranteed the promissory
notes.  J&M assigned the Realtree-J&M License Agreement to
Country Breeze.   To secure its obligations under the asset
purchase agreement, Country Breeze pledged the assets it
received, including the License Agreement, as collateral.

There is no assertion that Country Breeze agreed to assume
any of the unpaid royalties J&M owed Realtree before the sale
and assignment.   J&M's CEO believed that "when the assignment
was made [to Country Breeze,] there were no more royalties owed"
by J&M to Realtree.  Kvamme Dep. 97:6-7.  That belief was based
on the CEO's September 10, 2015 discussion with a Realtree
representative who "expressed his positive feeling about the
meeting with the Willmans and that Realtree was happy [J&M] had
found someone to take over the business."  *Id.* at 97:19-22.  The

CEO did not recall confirming her belief in writing. *Id.* at 166:19-167:2. Realtree presented evidence that its representative discussed the issue of royalties at the September 10, 2015 meeting and J&M's CEO said that J&M "would work to correct the royalties or make payments on the royalties." Sweet Dep. 202:18-203:7, ECF No. 45. J&M did not do so.

After the asset purchase agreement between J&M and Country Breeze became final, Country Breeze began selling Realtree energy drink products pursuant to the License Agreement. Sales dwindled, and Country Breeze blamed the Realtree-Mello Yello campaign. Realtree pointed to evidence that sales of J&M's Realtree energy drink products had begun to decline before the Realtree-Mello Yello campaign launched, and it also pointed to evidence that other issues, like missing and damaged products, caused a decline in sales. But J&M pointed to evidence that Country Breeze was unable to compete with the Realtree-branded Mello Yello beverages. Country Breeze's distributors complained that "people just liked the camouflage can" and Country Breeze was not "able to compete at a buck 99 Realtree Energy against the 99 cent Mello-Yello." Hughen Dep. 146:2-24. And, Realtree cited evidence suggesting that Country Breeze's sales dropped so dramatically after the Realtree-Mello Yello campaign began that approximately half of Country Breeze's distributors terminated their relationships with Country Breeze due to lack of sales.

J. Willman Dep. 95:22-96:13, ECF No. 38.  The lower sales, in turn, meant that Country Breeze had to ship the product in partial pallets, which resulted in damaged product.  *Id.* at 192:6-194:20 (explaining how the damaged product "was all due to lack of -- loss of sales, because we couldn't send whole pallets").

Country Breeze never paid any royalties to Realtree. Realtree terminated the License Agreement, effective December 31, 2016.  J. Willman Dep. Ex. 23, Termination Letter (Dec. 23, 2016), ECF No. 38-23.  The termination letter was addressed to Country Breeze and J&M, but J&M contends that it did not receive the letter because Realtree sent it to an old address.  Among other things, the letter stated that Country Breeze had failed to comply with the terms of the License Agreement because it had not remitted any royalty payments or royalty reports to Realtree.  *Id.* at 2.  Realtree also sought to "inspect, audit and copy any of Country Breeze's books and records and any other records relating to the Licensed Products."  *Id.*

J&M has not been able to collect on the promissory notes that Country Breeze executed as part of the asset purchase agreement.  J&M contacted Country Breeze to ask for payments, invoiced Country Breeze for unpaid amounts due under the promissory notes, and sent a demand letter.  K. Willman Dep. Ex. 58, Email Chain between K. Willman and C. Perry (Jul. 12, 2016),

ECF No. 39-26; K. Willman Dep. Ex. 57, J&M Invoice (Mar. 1, 2017), ECF No. 39-25; Def.'s Resp. to Pl.'s Mot. for Summ. J. Ex. E, Notice of Default (Sept. 28, 2017), ECF No. 48-6.  J&M has not sued Country Breeze, and it has not tried to recover on the Willmans' personal guarantees.  J&M admits that it foreclosed on its collateral—the assets Country Breeze purchased from J&M, including the License Agreement.  A public auction was held in April 2018, and J&M acquired Country Breeze's interest in the License Agreement.  By then, the License Agreement had been terminated.[2]

In 2016, Country Breeze sued Realtree and Coca-Cola in state court for breach of contract, fraudulent inducement, and tortious interference with business.  After conducting some discovery, Country Breeze dismissed its claims against Coca-Cola with prejudice and dismissed its claims against Realtree without prejudice.  Country Breeze reinstituted its action against Realtree in this Court in 2018.  Realtree brought this action against J&M in 2018.

---

[2] With its reply brief, J&M submitted a declaration stating that Realtree's counsel telephonically attended J&M's public sale of its collateral in April 2018 and did not mention that (1) the License Agreement had been terminated or (2) anyone who purchased the License Agreement would be held responsible for unpaid royalties.  The Court cannot consider this evidence, which was submitted for the first time with the reply brief.

DISCUSSION

Realtree asserts claims against J&M in this action for failing to make royalty payments, failing to indemnify Realtree for costs and fees it incurred in bringing this action and defending the Country Breeze litigation, and litigation expenses pursuant to O.C.G.A. § 13-6-11. J&M seeks summary judgment on these claims, and Realtree seeks summary judgment on its claims for royalties and a royalty audit. J&M counterclaims for breach of contract, misrepresentation, tortious interference with contract, and litigation expenses. Realtree has moved for summary judgment on all these claims. The Court addresses each claim and corresponding motion for summary judgment in turn.

I.   **Realtree's Claims**

A.   Unpaid Royalties and Interest

Realtree maintains that J&M breached the License Agreement by failing to pay royalties. It is undisputed that J&M agreed to pay Realtree royalties. License Agreement § 11.1, ECF No. 26-3 at 6. J&M also agreed to provide royalty reports, and the License Agreement states that Realtree does not invoice for royalties. *Id.* §§ 11.2-11.3. The minimum annual royalty for 2013 and 2014 was $50,000. *Id.* § 11.5. The minimum annual royalty for 2015 to 2022 was $75,000, and payments were due quarterly. Addendum Schedule A, ECF No. 26-4 at 3. The License Agreement requires payment of interest in the event of late

11

Case 4:18-cv-00126-CDL   Document 62   Filed 05/12/20   Page 12 of 29


royalty payments.  License Agreement § 11.6, ECF No. 26-3 at 7. And, J&M agreed that during the term of the License Agreement and for at least five years after its termination or expiration, Realtree "shall have the right, upon thirty (30) days written notice, to inspect, audit and copy any of [J&M's] books and records and any other records related to the Licensed Products," in part for the purpose of determining whether there was a deficiency of royalty payments.  *Id*. §§ 12.1-12.4.

Realtree seeks three things in this action: (1) payment of royalties that J&M owed before the September 25, 2015 assignment of the License Agreement to Country Breeze, plus interest; (2) payment of royalties that became due after the assignment, plus interest; and (3) a royalty audit.

### 1.  Pre-Assignment Royalties

It is undisputed that J&M was almost $90,000.00 behind on its royalty payments to Realtree when J&M assigned the License Agreement to Country Breeze in 2015.  J&M did not point to any evidence that Realtree expressly forgave these royalties. Rather, J&M argues that Realtree waived its right to collect such royalties by not pursuing the royalties from J&M between September of 2015 and June of 2018.  But J&M expressly agreed that such conduct would not constitute a waiver and that agreement was never modified.

In the License Agreement, the parties agreed:

> [A]ny failure of [Realtree] and/or [J&M] to enforce,
> at any time, any of the provisions of this Agreement
> or any rights or remedies with respect thereto or to
> exercise any election therein provided, shall not
> constitute a waiver of any such provision, right,
> remedy or election or in any way affect the validity
> of this Agreement.  The exercise by [Realtree] of any
> of its rights, remedies or elections under the terms
> of this Agreement shall not preclude or prejudice
> [Realtree]'s rights to exercise at any other time, any
> other right, remedy or election it may have under this
> Agreement.

License Agreement § 25.2, ECF No. 26-3 at 11.

The parties to a written agreement may modify that agreement through their conduct, even if the contract has a no-waiver provision like the one in the License Agreement.  But to overcome a no-waiver provision, there must be enough evidence to establish an intentional relinquishment of a known right.  *See, e.g., Glimcher Props., L.P. v. Bi-Lo, LLC*, 609 S.E.2d 707, 709-10 (Ga. Ct. App. 2005) (stating that course of conduct could modify a no-waiver provision but finding that the parties' course of conduct did *not* establish waiver because the tenant "acted promptly" to enforce the contract's grocery exclusivity provision when another tenant expanded its operations to include selling groceries).  Here, J&M argues that because Realtree did not invoice J&M for the royalties and did not seek to recover the unpaid royalties from J&M between September 10, 2015 and June of 2018, Realtree waived its right to recover the unpaid royalties.  But the License Agreement states that Realtree does not invoice for royalties and that J&M must submit royalty

payments and reports to Realtree without any invoices from Realtree. License Agreement §§ 11.2-11.5, ECF No. 26-3 at 6-7. Moreover, the License Agreement permitted Realtree to audit J&M's records to determine whether there was a deficiency of royalty payments up to five years after termination of the License Agreement. *Id.* §§ 12.1-12.4, ECF No. 26-3 at 7.

J&M nonetheless argues that Realtree's delay in seeking the pre-assignment royalties creates a genuine factual dispute as to whether Realtree waived its right to seek them. J&M ignores the principle that "mere silence is ordinarily not sufficient to establish a waiver unless there is an obligation to speak . . . ." *DuPree v. S. Atl. Conference of Seventh-Day Adventists, Inc.*, 683 S.E.2d 1, 3 (Ga. Ct. App. 2009). J&M did not point to any authority that a delay in enforcing a contractual provision, without more, is a "course of conduct" sufficient to authorize complete disregard of the parties' agreement to include a no-waiver provision in their contract. Rather, J&M relies upon cases that involve a delay *plus* something more. For example, in *DuPree*, the property seller knew that the buyer had not made its second earnest money payment as required by the contract, but its "protracted silence" of more than a year on this issue, *plus* the fact that seller met the buyer's "inquiries and requests to close with silence or other bases for not going through with the deal,"

raised a fact question as to whether the seller waived the right
to object to closing the sale on this ground. *Id.* at 3.
Likewise, in *Kusuma v. Metametrix, Inc.*, 381 S.E.2d 322 (Ga. Ct.
App. 1989), the contract permitted a tenant to terminate its
lease if a certain event occurred, and there was a jury question
on the issue of waiver because the tenant waited until eighteen
months after the event to attempt to terminate the lease, *plus*
it paid rent and occupied the leased premises in the interim.
*Id.* at 324.

Here, J&M argues that the delay in seeking royalties, plus
Realtree's consent to the Country Breeze assignment without
conditioning consent on payment of outstanding royalties,
establish that Realtree waived its right to seek the royalties.
But J&M acknowledges that the parties discussed the outstanding
royalties one day before Realtree consented to the assignment,
and J&M did not point to any evidence that Realtree forgave
those royalties at that time. Thus, the consent to assignment
does not establish a course of conduct that amounts to a waiver,
and J&M's only real evidence to support waiver is Realtree's
delay in seeking the royalties. That is not enough to create a
genuine factual dispute on the issue of waiver. To conclude
otherwise would make the no-waiver agreement here meaningless
and would set a precedent, at least in this Court, that mere

delay in the enforcement of a contractual right subjects every no-waiver provision to review by a jury.

J&M argues that even if Realtree did not waive its right to seek pre-assignment royalties, J&M's assignment of the License Agreement with Realtree's consent was a novation that extinguished J&M's liability for the unpaid royalties. J&M again ignores well-established legal principles. A novation requires intent to "release the original obligor and extinguish his liability." *Worth Cty. Indus. Dev. Auth. v. Lehigh Valley Indus., Inc.*, 359 S.E.2d 707, 710 (Ga. Ct. App. 1987) (quoting *Cowart v. Smith*, 50 S.E.2d 863, 865 (Ga. Ct. App. 1948)); *see also Fagbemi v. JDN Realty Corp.*, 621 S.E.2d 765, 767-68 (Ga. Ct. App. 2005) (finding that landlord's consent to assignment of a lease did not release the original tenant from liability because there was no evidence of intent for the assignment to act as a novation). While the assignment contemplated Country Breeze assuming J&M's rights and obligations going forward, Country Breeze did not agree to assume J&M's unpaid royalties. And, J&M pointed to no evidence that Realtree intended to extinguish J&M's liability for unpaid royalties by consenting to the Country Breeze assignment. Only one day before Realtree signed the consent to assignment, J&M and Realtree discussed the issue of J&M's unpaid royalties, and there was no express waiver or forgiveness of them. There was no novation here.

16

In summary, J&M did not point to evidence to create a genuine fact dispute on Realtree's claim for pre-assignment royalties.  Realtree is entitled summary judgment on its claim that J&M owes royalties that were due under the License Agreement before September 25, 2015, plus interest.  And, Realtree is entitled to summary judgment on its claim for a royalty audit to determine the amount of the deficiency.[3]

The Court cannot determine the exact amount of royalties plus interest due based on the present record.  Within twenty-one days of today's order, the parties shall provide a joint proposed scheduling order for resolving this issue.

2.  *Post-Assignment Royalties*

After the assignment, Country Breeze was responsible for submitting royalty reports and making royalty payments.  It did not do so.  Realtree does not argue that J&M remained responsible for the royalty reports and payments after the assignment since Country Breeze assumed the licensee's obligations under the License Agreement and Realtree consented to that assumption without requiring J&M to be jointly liable for those obligations.  Realtree contends, however, that when J&M purchased the license at a public auction after it foreclosed on its collateral, J&M also assumed an obligation for

---

[3] J&M argues that it produced the information needed to do the audit during discovery in the Country Breeze litigation, but it did not cite any evidence in support of this assertion.

all of Country Breeze's unpaid royalties.   Realtree did not
point to any evidence or authority in support of this argument.
Generally, if a secured party forecloses on its security
interest and disposes of the property, the transferee for value
of the collateral obtains all of the debtor's rights in the
collateral and takes the property free of the secured party's
security interest and any subordinate security interest or other
subordinate liens.   O.C.G.A. § 11-9-617(a)-(b).   Realtree
pointed to no evidence that it had any security interest in the
License Agreement that was superior to J&M's.   Accordingly, J&M
took the License Agreement free of any claim Realtree had for
post-assignment royalties, and J&M is entitled to summary
judgment on Realtree's claim for post-assignment royalties.

    B.   Indemnification

    In its complaint, Realtree asserted three "indemnification"
claims: Count Three under § 20.1 of the License Agreement, Count
Four under § 29.4 and § 29.2 of the License Agreement, and Count
Five for breach of the License Agreement's implied duty of good
faith and fair dealing.   J&M moved for summary judgment on all
these claims.   Realtree moved for summary judgment on Count Four
to the extent it seeks reimbursement of Realtree's costs in
bringing this action.   Realtree does not oppose summary judgment
on Count Three, which sought indemnification under § 20.1 of the

License Agreement.   Accordingly,  J&M  is  entitled  to  summary
judgment on Count Three.

Count Four alleges that J&M must reimburse Realtree for the
costs  of  bringing  this  action  under  § 29.4  of  the  License
Agreement.   Compl. ¶¶ 61-65, ECF No. 1-1 at 12.   Section 29.4
states: "[J&M]  shall  reimburse  [Realtree]  for  all  reasonable
expenses,  legal  fees  and  costs  required  to  enforce  [J&M's]
obligations  under  this  Agreement."   License  Agreement § 29.4,
ECF  No.  26-3  at  11.   Since  Realtree  is  entitled  to  summary
judgment on its breach of contract claim against J&M, J&M "shall
reimburse  [Realtree]  for  all  reasonable  expenses,  legal  fees  and
costs  required  to  enforce  [J&M]'s  obligations"  under  the  License
Agreement.   *Id.*   Thus, Realtree is entitled to summary judgment
on  its  claim  that  J&M  is  liable  for  fees  and  costs  under  the
License  Agreement.   There  is  no  evidence  in  the  present  record
regarding  the  amount  of  these  fees  and  costs.   Accordingly,
within  twenty-one  days  of  today's  order,  Realtree  shall
supplement  its  motion  for  summary  judgment  by  submitting
evidence supporting the amount of its fees and costs.  J&M shall
have 21 days to respond.

Count Four also alleges that J&M breached § 29.2 of the
License  Agreement,  which  states:  "During  the  term  of  this
Agreement, [J&M] shall not negotiate with respect to, enter into
agreements  relating  to,  or  participate  in  business  transactions

which are inconsistent with the purpose of this Agreement or which would tend to diminish [J&M]'s ability to meet its obligations hereunder." *Id.* § 29.2. Count Five alleges that J&M breached the License Agreement's implied duty of good faith and fair dealing. In its summary judgment motion, J&M argues that the License Agreement's indemnification provision does not support a claim for contractual indemnification, but Counts Four and Five are not asserted under the License Agreement's indemnification clause. Rather, Realtree argues that J&M's assignment of the License Agreement to Country Breeze without informing it of the Realtree-Mello Yello campaign diminished the licensee's ability to meet its obligations and that the assignment thus amounted to bad faith, proximately causing Realtree to incur damages in the form of litigation fees and expenses in the Country Breeze actions. J&M did not clearly move for summary judgment on this issue, and if the Court cannot discern whether summary judgment is sought on a particular issue, judgment as a matter of law on that issue would not be appropriate.[4] Therefore, the Court denies J&M's summary judgment motion on Counts Four and Five.

---

[4] J&M's summary judgment motion focuses on whether J&M has a duty to indemnify Realtree for the costs of the Country Breeze litigation under § 20.1 of the License Agreement. In the alternative, J&M argues that the record establishes as a matter of law that J&M did not conceal the Realtree-Mello Yello deal from Country Breeze. But the parties in this action acknowledge that the Willmans contend that they were *not* informed about the Realtree-Mello Yello campaign. *See*

C.   Litigation Expenses

In addition to its claim for litigation expenses under the License Agreement, Realtree seeks litigation expenses under O.C.G.A. § 13-6-11.   The Court finds that there is a genuine fact dispute on whether J&M acted in bad faith, has been stubbornly litigious, or has caused Realtree unnecessary trouble and expense.   J&M's summary judgment motion on this claim is denied.

II.  **J&M's Counterclaims**

A.   Breach of Contract

J&M claims that Realtree breached the License Agreement's exclusivity provision by entering the Permission Agreement with Coca-Cola and permitting its intellectual property to be used on Mello Yello containers.   Even if the Court assumes for purposes of this summary judgment motion that the Realtree-Mello Yello campaign amounted to a breach of the License Agreement's exclusivity provision and that J&M did not waive the breach by consenting to a limited test of the Realtree-Mello Yello campaign for the 2015 fall hunting season, J&M does not contend that it suffered any direct damages as a result of this alleged

_Country Breeze Ventures, LLC_, 2020 WL 1876252, at *3 (summarizing James Willman's testimony regarding the September 10, 2015 meeting). Accordingly, there is a genuine fact dispute on whether J&M concealed the Realtree-Mello Yello campaign from Country Breeze.   J&M's summary judgment does not clearly address Realtree's contention that J&M breached § 29.2 of the License Agreement and the License Agreement's implied covenant of good faith and fair dealing, proximately causing Realtree to incur damages in the form of litigation fees and expenses in the Country Breeze actions.

breach.   Critically, J&M did not point to any evidence that the
Realtree-Mello Yello campaign caused it to lose sales or suffer
other losses before it assigned the License Agreement to Country
Breeze.

J&M does argue that after it sold its Realtree energy drink
business to Country Breeze and Country Breeze assumed the
licensee's rights and obligations under the License Agreement,
the Realtree-Mello Yello campaign caused *Country Breeze* to lose
sales, which in turn caused Country Breeze to stop making
payments to J&M under the promissory notes.   Thus, J&M argues
that Realtree breached its contract with Country Breeze,
resulting in harm to Country Breeze that ultimately caused
damages to J&M.[5]   Realtree contends that after the assignment to
Country Breeze, J&M was no longer a party to the License
Agreement, so it lacks standing to enforce the License Agreement
for any damages that arose after the assignment.   J&M did not
clearly respond to this argument.   J&M does not dispute that
Country Breeze became the sole licensee under the License
Agreement after the assignment, and J&M did not point to any
evidence that it retained any rights under the License Agreement

---

[5] J&M also appears to argue that Realtree did not properly notify it
that the License Agreement had been terminated and that this failure
caused J&M to suffer additional damages.   J&M did not point the Court
to any evidence or authority that the License Agreement required
Realtree to provide J&M written notice of a termination after J&M
assigned the License Agreement to Country Breeze and Country Breeze
assumed the rights and obligations of the licensee.

after it assigned them to Country Breeze.  J&M did not present any authority that a nonparty may enforce a contract under the circumstances presented here.

Even if the Court liberally interpreted J&M's argument as a contention that J&M was a third-party beneficiary of the License Agreement after it was assigned to Country Breeze, the present record does not support such a claim.  The License Agreement does not mention any intention to benefit J&M.  And the mere fact that J&M may incidentally benefit from continued performance under the License Agreement based on the way J&M structured its deal with Country Breeze is not enough to make it a third-party beneficiary.  *Cf. Roberts v. DuPont Pine Prods., LLC*, 835 S.E.2d 661, 665 (Ga. Ct. App. 2019) (finding that there *was* evidence to support the conclusion that guarantors on a note were third-party beneficiaries of an indemnification agreement between two lumber companies in which one company expressly agreed to repay the note from the original obligor and keep current on the note).  For these reasons, the Court finds that Realtree is entitled to summary judgment on J&M's breach of contract claim.

   B.   Misrepresentation

J&M asserts that Realtree intentionally or negligently misrepresented the scope of the Realtree-Mello Yello campaign by describing it as a limited test for the fall quarter of 2015

23

when it was not so limited.   J&M further argues that it reasonably relied on this misrepresentation and consented to the "test," which allowed the Realtree-Mello Yello campaign to go forward, and that it suffered damages as a result.

To establish an intentional misrepresentation claim, J&M must show that (1) Realtree made a false representation of a material fact, (2) Realtree knew the representation was false when it was made, (3) Realtree intended for J&M to rely on the false representation, (4) J&M reasonably relied on the false representation, and (5) J&M was damaged as a result.   O.C.G.A. § 51-6-2; *accord Grand Master Contracting, L.L.C. v. Lincoln Apartment Mgmt. Ltd. P'ship*, 724 S.E.2d 456, 458 (Ga. Ct. App. 2012).   To establish a negligent misrepresentation claim, J&M must show that (1) Realtree negligently supplied it with false information, (2) J&M reasonably relied on the false information, and (3) J&M suffered economic injury proximately flowing from its reliance.   *See, e.g.*, *Martin v. Chasteen*, No. A19A1980, 2020 WL 1239488, at *3 (Ga. Ct. App. Mar. 13, 2020).

There is a genuine fact dispute on whether Realtree supplied J&M with false information about the Realtree-Mello Yello campaign.   Realtree disclosed the campaign to J&M as a limited test for the fall of 2015, but it did not disclose the Permission Agreement to J&M.   The term of the 2015 Permission Agreement was from January 1, 2015 to March 31, 2016, and the

Permission Agreement permitted Coca-Cola to distribute, market, and sell items displaying Realtree's intellectual property after that term if they were manufactured during the term.   2015 Permission Agreement § 4.   A reasonable juror could conclude from the 2015 Permission Agreement that the Realtree-Mello Yello campaign was not limited to the fall 2015 hunting season and that Realtree falsely represented that it was.   A reasonable juror could also find that Realtree, which had access to the terms of the 2015 Permission Agreement, knew its representation was false.

Realtree argues that even if it knowingly made a false representation about the scope of the Realtree-Mello Yello campaign, it did not intend for J&M to rely on the representation.   Realtree's chief argument is that it did not need J&M's consent to partner with Coca-Cola for the Realtree-Mello Yello campaign because J&M did not have an exclusive license to the intellectual property that was licensed to Coca-Cola.   But a juror could conclude that Realtree believed it needed J&M's consent for the Mello Yello campaign because Realtree acquiesced when J&M said no to the Mountain Dew proposal and sought J&M's approval for the Mello Yello campaign. And, for the reasons discussed in *Country Breeze Ventures, LLC*, 2020 WL 1876252, at *5-*7, a genuine fact dispute exists on the scope of the License Agreement's exclusivity provision.   Since a

jury could conclude that J&M received an exclusive license to all the "licensed property" listed on Schedule 1 for use on "beverages," it could also conclude that the only way for Realtree to license that intellectual property to another beverage manufacturer for use on soft drinks without breaching the License Agreement would be to get J&M's permission. Upon making that finding, a juror could conclude that Realtree misrepresented the scope of the Coca-Cola Permission Agreement to get J&M's consent to the Realtree-Mello Yello Campaign and that J&M reasonably relied on the misrepresentation when it gave consent for Realtree to grant Coca-Cola a license to the licensed property.

The Court further finds that a genuine fact dispute exists on the issue of damages arising from the misrepresentation. A juror could conclude that J&M suffered economic damages that were proximately caused by its reasonable reliance on Realtree's misrepresentation. After receiving J&M's consent, Realtree proceeded with the Realtree-Mello Yello campaign, which debuted about a month before J&M sold its energy drink business to Country Breeze and financed the deal by accepting promissory notes from Country Breeze that were due to J&M in installments. J&M pointed to evidence from which a reasonable juror could conclude that Country Breeze lost sales because of the similarly packaged Mello Yello products, which were less expensive and had

a more prominent placement in convenience stores. J&M also pointed to evidence from which a reasonable juror could find that Country Breeze's lost sales were so significant that Country Breeze did not make the minimum royalty payments to Realtree or the promissory note installment payments to J&M.

In summary, there is a genuine fact dispute on each element of J&M's misrepresentation claims. Accordingly, the Court denies Realtree's summary judgment motion as to these claims.[6]

C.   Tortious Interference

J&M does not oppose Realtree's summary judgment motion on its claim for tortious interference, so Realtree's motion is granted as to that claim.

D.   Litigation Expenses

J&M seeks litigation expenses under the License Agreement and under O.C.G.A. § 13-6-11. Realtree moved for summary judgment on both claims. First, Realtree argues that the License Agreement does not permit J&M to recover such expenses. J&M did not respond to this argument or point to any provision of the License Agreement that permits it to recover litigation expenses. Moreover, J&M's breach of contract claim fails for

---

[6] The Court previously concluded that Country Breeze could not assert a fraudulent inducement claim against Realtree based on its concealment of the Realtree-Mello Yello campaign because Country Breeze did not establish that Realtree had any legal duty to disclose the information to Country Breeze. *Country Breeze Ventures, LLC*, 2020 WL 1876252, at *7-*8. In contrast, here, a juror could conclude that Realtree affirmatively misrepresented the scope of the Realtree-Mello Yello campaign to J&M for the purpose of getting J&M's consent to the campaign.

the reasons set forth above.  Thus, to the extent J&M seeks to recover litigation expenses under the License Agreement, Realtree is entitled to summary judgment on that claim.

Turning to J&M's claim for litigation expenses pursuant to O.C.G.A. § 13-6-11, Realtree's sole basis for summary judgment on that claim is that summary judgment is proper on all of J&M's counterclaims.  But, as discussed above, genuine fact disputes preclude summary judgment on J&M's misrepresentation claims. Realtree did not clearly articulate another basis for summary judgment on J&M's claim for litigation expenses under O.C.G.A. § 13-6-11.  The Court therefore denies this portion of Realtree's motion.

CONCLUSION

As discussed above, both Realtree's motion for summary judgment (ECF Nos. 29 & 30) and J&M's motion for summary judgment (ECF Nos. 26 & 31) are granted in part and denied in part.  J&M is entitled to summary judgment on Realtree's claims for breach of contract based on unpaid post-assignment royalties and Realtree's claims for indemnification under § 20.1 of the License Agreement.  Realtree is entitled to summary judgment on its breach of contract claim for pre-assignment royalties, interest, and a royalty audit, as well as its claim for the costs of bringing this action under § 29.4 of the License Agreement.  Realtree is also entitled to summary judgment on

28

J&M's claims for breach of contract, tortious interference, and litigation expenses under the License Agreement.

Genuine fact disputes preclude summary judgment on the following claims, which remain pending for trial: Realtree's claims for damages based on J&M's alleged breach of § 29.2 of the License Agreement and the implied duty of good faith and fair dealing, Realtree's claim for litigation expenses under O.C.G.A. § 13-6-11, J&M's claims for intentional and negligent misrepresentation, and J&M's claims for litigation expenses under O.C.G.A. § 13-6-11. This action will be placed on the calendar for the Court's September trial term. The notice of pretrial conference will be issued in the summer.

IT IS SO ORDERED, this 12th day of May, 2020.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA